UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SADA 2400 OGDEN, LLC,<br>an Illinois limited liability company,<br><br>        Plaintiff,<br><br>v.<br><br>2400 OGDEN AVENUE - 10041667 LLC,<br>a Delaware limited liability company,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 20 C 4224<br><br>Judge Sara L. Ellis |

## OPINION AND ORDER

Plaintiff SADA 2400 Ogden, LLC ("SADA"), an Illinois limited liability company, sought to purchase a commercial office building located at 2400 Ogden Avenue, Lisle, Illinois, in DuPage County, Illinois (the "Property") from Defendant owner, 2400 Ogden Avenue - 10041667 LLC ("2400 Ogden Ave"), a Delaware limited liability company. When the purchase fell through, SADA filed this lawsuit against 2400 Ogden Ave, bringing two claims based on fraud and one claim based on the damages provision executed by the parties. 2400 Ogden Ave now moves to dismiss all three claims under Federal Rule of Civil Procedure 12(b)(6). Because SADA validly released any and all claims against 2400 Ogden Ave related to conduct it knew of prior to May 15, 2020, the Court dismisses with prejudice SADA's claim based on the damages provision and its fraud claims based on representations made prior to April 9, 2020. As for the remaining fraud claims based on the April 15, 2020 representation, SADA failed to plead fraud with particularity, warranting dismissal without prejudice.

## BACKGROUND[1]

In March 2020, 2400 Ogden Ave sought to sell the Property via an online auction. The Property has two tenants: CommScope (Arris) ("Arris") and Automated Logic Corporation. Sometime prior to March 23, 2020, Colliers International ("Colliers"), 2400 Ogden Ave's broker, prepared and sent an Offering Memorandum for the Property ("Initial OM") to SADA. The Initial OM described the Property has having "upside potential" and listed the Property as 71% leased. Doc. 1-1 at 73–74. The Initial OM also stated Arris "is in negotiations to lease the entire vacant space of 35,287 square feet which would bring the building to 100% capacity." *Id.* at 74.

On or about April 1, 2020, SADA communicated to Colliers that, considering the pending lease negotiations, it was not interested in the Property and suggested 2400 Ogden Ave allow it to participate in the negotiations if not finalized before the sale. In response, on April 3, Colliers said the lease expansion was a "done deal" and provided SADA with an updated Offering Memorandum for the Property ("Updated OM"). *Id.* at 5. The Updated OM described the Property as "fully stabilized" and listed the Property as 96.7% leased. *Id.* at 118–19.

---

[1] The Court takes the facts in the background section from SADA's complaint and exhibits attached thereto and presumes them to be true for the purpose of resolving 2400 Ogden Ave's motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). Although the Court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment, *Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018), the Court may consider "documents that are central to the complaint and are referred to in it" in ruling on a motion to dismiss, *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Here, SADA attached the Agreement of Purchase and Sale and Joint Escrow Instructions (Commercial) ("Agreement") to its complaint and 2400 Ogden Ave attached the First Amendment to Agreement of Purchase and Sale and Joint Escrow Instructions (Commercial) ("Amendment") to its motion to dismiss. According to the Amendment's explicit terms, the "Amendment, together with the Agreement, is the complete understanding between the Parties and supersedes all other prior agreements and representations concerning its subject matter." Doc. 18-1 § 5. The Agreement is central to and referred to in the complaint. Therefore, as agreed to by the parties, the Court will consider both the Agreement and the Amendment for the purpose of resolving 2400 Ogden Ave's motion to dismiss.

The auction took place from April 6 through April 8, 2020. SADA submitted the highest bid and won the auction. On April 9, SADA executed the Agreement to purchase the Property and wired $1,086,750 to the escrow/closing agent for the earnest money deposit pursuant to the Agreement. Section 10 of the Agreement, titled "DEFAULT/REMEDIES," described the agreed upon damages each party could seek in the event of a breach. In relevant part, Section 10(A) ("Liquidated Damages Provision") reads:

> Buyer and Seller expressly agree that it would be extremely difficult or impractical to determine Seller's actual damages as a result of such a default by Buyer, and therefore the parties agree that Seller shall retain as liquidated damages and not as a penalty and as a reasonable pre-estimate of Seller's actual damages for breach of this Agreement an amount equal to the Earnest Money Deposit and that such liquidated amount represents reasonable compensation to Seller.

*Id.* at 36.

According to the Agreement, 2400 Ogden Ave had the opportunity to reject or approve the transaction for a period of fifteen business days after April 9, 2020. On April 15, Colliers told SADA for the first time that 2400 Ogden Ave had not, as previously represented, executed the lease expansion with Arris. Colliers further represented that Arris accepted all terms of the lease expansion. The next day, on April 16, SADA instructed 2400 Ogden Ave not to execute the lease expansion without SADA's involvement. On April 17, 2400 Ogden Ave sent its approval of the Agreement, triggering the release of the earnest money deposit pursuant to the Agreement.

On May 15, 2020, the parties executed the Amendment which extended the closing date to May 26, 2020 and contained a release of claims provision. Section 2 of the Amendment, titled "Release of Claims" ("Release"), in relevant part, reads:

>Release of Claims. As a material part of the consideration for Seller's execution of this Amendment, Buyer does hereby unconditionally, irrevocably and unequivocally:
>
>. . .
>
>(b) release and forever discharge Seller and its past, present, and future members, directors, managers, officers, employees, attorneys, advisers, consultants, servicers, representatives or agents (collectively, the "Released Parties") from any and all existing claims, causes of action, suits, proceedings, demands, damages, costs and expenses of every kind whatsoever, whether known or unknown, arising from or relating to any alleged or actual act, omission, occurrence, or transaction prior to or the date of this Amendment (collectively, the "Claims and Liabilities").

Doc. 18-1 § 2 (emphasis omitted).

On May 18, 2020, SADA communicated to Arris that it "accepted all terms of the deal" for the lease expansion. Doc. 1-1 at 10. On May 21, Arris advised SADA that it would not sign the lease expansion. The same day, SADA sought 2400 Ogden Ave's assistance in executing the lease expansion and postponing the closing to do so. 2400 Ogden Ave refused to assist and asserted that, in response to SADA's request on April 16, 2020, 2400 Ogden Ave "halted discussions" with Arris pending closing of the sale. *Id.* On May 22, SADA again asked for 2400 Ogden Ave's assistance in securing the lease expansion. On May 26, 2400 Ogden Ave again refused assistance. In response, SADA demanded return of the earnest money deposit. On May 29, 2400 Ogden Ave advised it would retain the earnest money.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's

4

favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

2400 Ogden Ave's motion challenges the sufficiency of the claims in SADA's complaint but also asserts that the Release bars all three claims. Because the issue is potentially dispositive, the Court first addresses whether the Release bars the claims in the complaint.

**I.     Release as an Affirmative Defense**

A release is an affirmative defense that a party must raise in its responsive pleading. Fed. R. Civ. P. 8(c)(1); *Caudill Seed & Warehouse Co. v. Rose*, 868 F.3d 558, 560 (7th Cir. 2017). A plaintiff need not "anticipate and negate [a release] in her pleading." *Perry v. Merit Sys. Prot. Bd.*, --- U.S. ----, 137 S. Ct. 1975, 1986 n.9 (2017). However, a release may form the basis of a dismissal at the pleading stage "when the factual allegations in the complaint unambiguously establish all the elements of the defense." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016). In other words, dismissal based on a release is appropriate if the plaintiff pleads herself out of court. "[T]o successfully assert the affirmative defense of release, a defendant must show that the release is valid and that the release covers the claims at issue in the case." *Dyson, Inc. v. Bissell Homecare, Inc.*, 951 F. Supp. 2d 1009, 1034 (N.D. Ill. 2013).

5

2400 Ogden Ave asserts that the Release is enforceable and bars all three claims in the complaint. In response, SADA does not contest the validity of the Release, but instead argues the Release does not cover the fraud claims. SADA makes no argument in response to whether the Release bars its request for a declaratory judgment with respect to the Liquidated Damages Provision. By failing to do so, SADA has effectively conceded that the Release bars this claim. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (noting that a party waives an argument "by not responding to alleged deficiencies in a motion to dismiss"). Regardless, the Court will proceed to address whether the Release covers all three claims.

A.    **Construction of the Release**

As described herein, the unambiguous language of the Release generally covers all claims relating to conduct that took place prior to its execution. Illinois law applies under the Agreement. In Illinois, general principles of contract law govern a release. *Cannon v. Burge*, 752 F.3d 1079, 1088 (7th Cir. 2014); *Farm Credit Bank of St. Louis v. Whitlock*, 144 Ill. 2d 440, 447 (1991). "The primary objective in construing a contract is to give effect to the intent of the parties. A court must initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent." *Gallagher v. Lenart*, 226 Ill. 2d 208, 232–33 (2007) (citations omitted); *see also Capocy v. Kirtadze*, 183 F.3d 629, 632 (7th Cir. 1999); *Whitlock*, 144 Ill. 2d at 447.

Accordingly, the Court first looks to the language of the Release. The Release contains broad language that covers "any and all existing claims, causes of action, suits, proceedings, demands, damages, costs and expenses of every kind whatsoever, whether known or unknown, arising from or relating to any alleged or actual act, omission, occurrence, or transaction prior to or the date of this Amendment." Doc. 18-1 § 2(b). Given its plain and ordinary meaning, the

Amendment releases all claims SADA had against 2400 Ogden Ave arising from or relating to any conduct that occurred prior to May 15, 2020. The Release does not single out any specific claim or conduct. Instead, the Court finds that the Release is general, all-encompassing, and unambiguous. *Compare Rakowski v. Lucente*, 104 Ill. 2d 317, 323 (1984) (finding release unambiguous, comprehensive, and applicable to a claim not expressly enumerated where the release used only general language relating to "any and all claims"), *with Whitlock*, 144 Ill. 2d at 448 (finding release ambiguous where it used both general language relating to "any and all claims" and specific language referring to a particular claim).

      **B.**      **Knowledge of Claims at Time of Execution**

Because the Court finds that the Release is general, the Court must next consider whether SADA knew of the three claims alleged in the complaint at the time it executed the Release. "Illinois courts read general releases to include claims of which the parties were aware at the time of the release's execution." *Capocy*, 183 F.3d at 634; *see also Whitlock*, 144 Ill. 2d at 448 ("A general release is inapplicable to an unknown claim."); *Carlile v. Snap-on Tools*, 271 Ill. App. 3d 833, 840 (1995) (finding general release did not bar fraud claim where "[n]o evidence indicate[d] plaintiff was aware of a legal fraud claim when he signed the release").

      **1.**      **Fraud Claims (Counts I and II)**

The Court first addresses whether, at the time it executed the Release, SADA knew of the facts underlying its fraud claims. "Broadly speaking, for a misrepresentation to constitute fraud which invalidates a contract, it must be a representation in the form of a statement of a material fact, made for the purpose of inducing a party to act; it must be false and known by the party making it to be false, or not actually believed by him, on reasonable grounds, to be true; and the party to whom it is made must be ignorant of its falsity, must reasonably believe it to be true,

7

must act thereon to his damage, and in so acting must rely on the truth of the statement." *Cannon*, 752 F.3d at 1093 (quoting *Wilkinson v. Appleton*, 28 Ill. 2d 184, 187 (1963)).

SADA's fraud claims primarily allege that 2400 Ogden Ave induced SADA into executing the Agreement on April 9, 2020 by misrepresenting that it had already executed the lease expansion with Arris. In the complaint, SADA admits that it knew on April 15, one before it signed the Release, that 2400 Ogden Ave "had not, as previously represented, executed a lease expansion" with Arris. Doc. 1-1 at 9. In its response, SADA acknowledges that this misrepresentation forms the basis for "much of the fraudulent conduct" it alleges. Doc. 21 at 12.

Therefore, at the time SADA executed the Release, SADA admits it knew of any fraud claim it had against 2400 Ogden Ave based on the misrepresentation that Arris had executed the lease expansion when SADA signed the Agreement on April 9, 2020. *Compare Borsellino v. Putnam*, 2011 IL App (1st) 102242, ¶¶ 115–17 (finding release barred fraud claims where plaintiff knew of defendant's fraudulent conduct at the time it signed the release), *and Hampton v. Ford Motor Co.*, 561 F.3d 709, 715–16 (7th Cir. 2009) (finding release barred employment discrimination claim because plaintiff knew of alleged conduct prior to signing the release), *with Thornwood, Inc. v. Jenner & Block*, 344 Ill. App. 3d 15, 21–22 (2003) (finding plaintiff did not know of fraud claims when signing release because it did not become aware of defendant's fraudulent conduct until almost four years after signing the release). In its response, SADA argues it "was not aware of the fraud claims at the time of the Amendment" because it only discovered on May 21, 2020 that Arris had not agreed to the terms of the lease expansion. Doc. 21 at 12. However, this does not address the fact that when it signed the Release, SADA knew Arris had not executed the lease expansion.

8

Having pleaded in its complaint that it knew of this misrepresentation before executing the Release, SADA has effectively pleaded itself out of court with respect to any fraud claims based on that misrepresentation. *See NewSpin Sports, LLC v. Arrow Elec., Inc.*, 910 F.3d 293, 304–06 (7th Cir. 2018) (affirming dismissal of contract claims based on affirmative defense of statute of limitations where complaint and contract unambiguously satisfied defense). Consequently, the Release bars SADA's fraud claims based on the alleged misrepresentation that Arris had already executed the lease expansion when SADA signed the Agreement.

SADA alleges only one other misrepresentation as a basis for its fraud claims. Specifically, SADA pleads that on April 15, 2020, 2400 Ogden Ave "intentionally misrepresented that [Arris] had accepted all terms of the lease expansion, after the Auction, to induce [SADA] to proceed with the consummation of the Agreement." Doc. 1-1 at 9. SADA alleges it did not learn this representation was false until May 21, 2020. *Id.* at 10. Therefore, SADA did not know of this allegedly fraudulent conduct at the time it signed the Release on May 15, 2020. Because the factual allegations in the complaint do not establish SADA's awareness of this misrepresentation when it executed the Release, the Release does not bar any fraud claim based on that misrepresentation. As a result, after addressing whether the Release covers the declaratory judgment request, the Court will proceed to assess the sufficiency of SADA's fraud claims based on this misrepresentation. *See Prakash v. Parulekar*, 2020 IL App (1st) 191819, ¶ 27 (considering only the alleged conduct not barred by the release in determining sufficiency of complaint).

### 2. Liquidated Damages Claim (Count III)

The Court next addresses whether at the time it executed the Release, SADA had knowledge of a claim based on the alleged invalidity of the Liquidated Damages Provision.

"Under Illinois law, a liquidated damages clause is valid and enforceable if: (1) the parties intended to agree in advance to the settlement of damages that might arise from the breach; (2) the amount of liquidated damages was reasonable at the time of contracting, bearing some relation to the damages that might occur; and (3) actual damages would be uncertain in amount and difficult to prove." *Smart Oil, LLC v. DW Mazel, LLC*, 970 F.3d 856, 863 (7th Cir. 2020).

The Release bars SADA's liquidated damages claim because the claim inherently involves conduct, of which SADA was clearly aware, that took place prior to execution of the Release. The liquidated damages claim alleges that "[a]t the time the parties entered into the Agreement, the parties could reasonably forecast the harm the [sic] caused by a breach in the Agreement" and that the damages agreed upon were not a reasonable forecast. Doc. 1-1 at 16–17. Appropriately, SADA focuses on allegations regarding the parties' ability to forecast damages and the reasonableness of that forecast *at the time the parties executed the Agreement*. *See Smart Oil, LLC*, 970 F.3d at 864–65 (noting events that take place after execution are irrelevant to the validity of a liquidated damages provision). Necessarily then, SADA knew of this claim at the time it executed the Agreement and therefore, when it executed the Release.

SADA does not respond to 2400 Ogden Ave's argument that the Release bars the liquidated damages claim or attempt to argue it did not know of this claim when it executed the Release, likely because it would be impossible to do so. The complaint establishes 2400 Ogden Ave's affirmative defense that the Release bars the liquidated damages claim. *See Hampton*, 561 F.3d at 715–16 (finding release unambiguously barred any claims prior to the date of the release where alleged conduct occurred prior to signing release). SADA therefore has pleaded itself out of court with respect to the liquidated damages claim, and thus, the Court dismisses that claim with prejudice. *See Stanley v. Hollingsworth*, 307 F. App'x 6, 10 (7th Cir. 2009) (affirming

dismissal with prejudice where complaint disclosed basis for affirmative defense of claim preclusion).

## II. Sufficiency of Remaining Fraud Claims

The Court next considers the sufficiency of the remaining allegations in SADA's fraud claims. To adequately plead fraud based on a misrepresentation, SADA must allege that (1) 2400 Ogden Ave made a false statement of material fact, (2) 2400 Ogden Ave knew of or believed in the statement's falsity, (3) 2400 Ogden Ave intended to induce SADA to act, (4) SADA acted in reliance on 2400 Ogden Ave's statement, (5) SADA was ignorant of the falsity at the time it acted, and (6) damages resulted from SADA's reliance. *See Cannon*, 752 F.3d at 1093. Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "This ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (citation omitted). Considering only the misrepresentation made on April 15, 2020 that Arris accepted all terms of the lease expansion, SADA has failed to state with particularity the circumstances constituting fraud.

Specifically, SADA does not allege with the required particularity that this misrepresentation was a statement of material fact and that it detrimentally relied on the misrepresentation. SADA merely alleges in one sentence that 2400 Ogden Ave "intentionally misrepresented that [Arris] had accepted all terms of the lease expansion, after the Auction, to induce Plaintiff to proceed with the consummation of the Agreement." Doc. 1-1 at 9. It is unclear what SADA means by "proceed[ing] with the consummation of the Agreement" and no

factual allegations describe how SADA detrimentally relied on the misrepresentation. *Id.* This does not provide the Court with the who, what, when, where, and how of the fraud.

In its response, SADA asserts: "The Amendment was executed on May 15, 2020, precisely because [SADA] believed, based upon [2400 Ogden Ave's] material misstatements and/or omissions, that the additional time would allow for the Arris lease extension and expansion to be finalized and executed." Doc. 21 at 12. However, SADA does not point to any allegations in the complaint that support this conclusion. If SADA intends to allege it detrimentally relied upon this misrepresentation in executing the Release, it must allege this claim with particularity. Because SADA fails to sufficiently plead with particularity, the Court dismisses its fraud claims based on the April 15, 2020 representation without prejudice.

## CONCLUSION

For the foregoing reasons, the Court grants 2400 Ogden Ave's motion to dismiss [17]. The Court dismisses with prejudice SADA's liquidated damages claim and its fraud claims based on representations made prior to April 9, 2020. The Court dismisses SADA's fraud claims based on the April 15, 2020 representation without prejudice. SADA has until March 24, 2021 to amend this claim if it can do so in accordance with this opinion and Federal Rule of Civil Procedure 11.

Dated: March 2, 2021

_____
SARA L. ELLIS
United States District Judge